UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MELISSA CARON,

                              Plaintiff,

        -v-                                          8:12-CV-1824

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

OFFICE OF MARK A. SCHNEIDER                  MARK A. SCHNEIDER, ESQ.
Attorneys for Plaintiff
57 Court Street
Plattsburgh, NY 12901

OFFICE OF REGIONAL GENERAL COUNSEL          BENIL ABRAHAM, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II    DAVID B. MYERS, ESQ.
Attorneys for Defendant                     REBECCA H. ESTELLE, ESQ.
26 Federal Plaza, Room 3904
New York, NY 10278


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

        Plaintiff Melissa Caron ("Caron" or "plaintiff") brings this action, pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3), seeking review of defendant Commissioner of Social

Security's ("Commissioner" or "defendant") final decision denying her application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  The parties

have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.[1]

## II. <u>BACKGROUND</u>

Caron filed applications for DIB and SSI claiming a period of disability beginning on August 1, 2008.  R. at 168-77.[2]  These applications were initially denied on August 7, 2009. <u>Id</u>. 103-108.  At plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on December 21, 2010.[3]  <u>Id</u>. 60-100.  A supplemental hearing was conducted to obtain additional testimony from a Vocational Expert ("VE") on July 14, 2011.  <u>Id</u>. 37-50.  The ALJ rendered a written decision on August 26, 2011, concluding that plaintiff was not disabled within the meaning of the Social Security Act from August 1, 2008 through the date of his decision.  <u>Id</u>. 15-28.  Plaintiff timely appealed this unfavorable disability determination to the Appeals Council.  <u>Id</u>. 11.  On November 30, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. R. at 1-4.

Caron filed this action on December 13, 2012, seeking judicial review of the Commissioner's denial of benefits.  Because the parties are familiar with the underlying facts, they are discussed only to the extent necessary to address plaintiff's appeal.

---

[1]  Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

[2]  Citations to "R." refer to the Administrative Record.

[3]  A hearing was initially scheduled on October 22, 2010, but was postponed to allow Caron an opportunity to obtain legal representation.  R. at 52-57.

## III.  DISCUSSION

### A.  Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied.  Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).  "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).  If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  See id.  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's.  Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

**B.  Disability Determination—The Five-Step Evaluation Process**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled.  See 20 C.F.R. § 404.1520.  At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity.  A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits.  Id. § 404.1520(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities.  Id. § 404.1520(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings").  Id. § 404.1520(d); see also id. Pt. 404,

Subpt. P, App. 1.  If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled."  Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. § 404.1520(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work.  20 C.F.R. § 404.1520(f).  The burden of proof with regard to these first four steps is on the claimant.  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five.  Id.  This step requires the ALJ to examine whether the claimant can do any type of work.  20 C.F.R. § 404.1520(g).  The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant has the RFC to perform work in any of five categories of jobs:  very heavy, heavy, medium, light, and sedentary.  Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).  "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity."  Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

## C. ALJ's Decision

The ALJ found that Caron had not engaged in substantial gainful activity since August 1, 2008, the alleged onset date.  R. at 17.  The ALJ next found that plaintiff's low back disorder, skin disorder, dysthymic disorder, anxiety disorder, endometriosis, obesity, and

borderline intellectual functioning were severe impairments, but that this combination of severe impairments did not meet or equal any of the Listings. Id. 19. The ALJ then determined that plaintiff retained the RFC to perform sedentary work with a number of limitations. Id. 20. Specifically, the ALJ found that plaintiff could perform:

> [S]edentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except limited to simple work in a setting with a low level of interaction with co-workers, supervisors, and the general public; occasionally lift, carry, push and pull 20 pounds; frequently lift and carry 10 pounds; sit about four hours in a work day with normal breaks, with sitting limited to about two hours at a time; stand about two hours in a work day, with standing limited to about one hour at a time; walk two hours in a work day with normal breaks, with walking limited to about three blocks at a time several times a day; occasionally reach overhead with each upper extremity; frequently reach in other directions with each upper extremity; frequently handle with the dominant right upper extremity; continuously finger and feel with the dominant upper extremity; occasionally push and pull with the dominant upper extremity; frequently handle, finger, and feel with the non-dominant upper extremity; never push and pull with the non-dominant upper extremity; occasionally use right foot controls and occasionally use left foot controls; never climb ladders, ropes, and scaffold; never balance; occasionally climb stairs and ramps; occasionally stoop, kneel, crouch, and crawl; never be exposed to unprotected heights or moving mechanical parts; occasionally operate a motor vehicle; occasionally be exposed to vibration; frequent exposure to humidity and wetness, pulmonary irritants, including dust, odors, and fumes, and frequent exposure to temperature extremes; and can have exposure to moderate noise, such as in an office.

Id. at 20.

Based on these findings and Caron's age, education, and work experience, the ALJ determined that jobs existed in significant numbers in the national economy that plaintiff could perform. R. at 26. Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. Id. 27.

**D. Plaintiff's Appeal**

Caron contends that the ALJ committed numerous errors and urges a remand solely for the calculation of benefits. Specifically, plaintiff argues the ALJ erred by: (1) failing to credit her testimony; (2) giving improper weight to the findings and conclusions of Daniel Knef, her primary care provider; and (3) determining that she retained the RFC for sedentary work despite her combination of limitations. Plaintiff further argues that the Appeals Council erred by failing to consider a September 18, 2012 Magnetic Resonance Imaging ("MRI") report in denying her request for review of the ALJ's decision.

**1. Caron's Testimony**

Caron first contends that the ALJ erred by discrediting her testimony regarding her subjective experience of pain. See Pl.'s Mem. 18. Plaintiff argues that the ALJ failed to "cite any significant discrepancies" in her testimony and improperly focused on a spine specialist's finding of "Waddell's signs" in making his credibility determination. Pl.'s Mem. 23.

"[T]he subjective element of [a plaintiff's] pain is an important factor to be considered in determining disability." Perez v. Barnhart, 234 F. Supp. 2d 336, 340 (S.D.N.Y. 2002) (quoting Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984)). However, an ALJ is not "required to credit [a plaintiff's] testimony about the severity of her pain and the functional limitations it cause[s]." Rivers v. Astrue, 280 Fed. Appx. 20, 22 (2d Cir. 2008) (summary order). Rather, "[t]he ALJ has discretion to evaluate the credibility of a [plaintiff] and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the [plaintiff]." Perez, 234 F. Supp. 2d at 340-41 (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)).

In assessing a plaintiff's credibility, the ALJ should consider: (1) a plaintiff's daily

activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken; (5) other treatment received; (6) other measures taken to relieve symptoms; and (7) any other factors concerning functional limitations due to pain or other symptoms. Calzada v. Astrue, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010) (citations omitted).

After considering these factors and other pertinent record evidence, an ALJ may reject a plaintiff's testimony provided he explain his decision to do so "'with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief' and whether this decision is supported by substantial evidence." Id. at 280-81 (citations omitted). "It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and appraise the credibility of witnesses, including the [plaintiff]." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks and alteration omitted).

Here, Caron testified that her anxiety and depression make it difficult to be around "big crowds of people" because she gets "very nervous and [has] anxiety attacks." R. at 68. She explained that she has suffered from anxiety attacks on an intermittent basis since 2007, and that the medication she takes for these problems is ineffective. Id. 72-73. Plaintiff further testified that her skin disease becomes irritated when she is walking and that she experiences lower back pain into her "bottom and [ ] right leg." Id. 68. She also alleged that approximately one day each week her endometriosis "cramps [her] over" for "about a half hour" and that she "can't even move" when this happens. Id. 68, 76.

When questioned by the ALJ, Caron clarified that she has suffered from her skin condition her entire life, but that its severity has remained constant. R. at 68-69. She also

explained that her lower back problems began when she fell off a swing at fourteen years old.  Id. 69.  Plaintiff testified that she experiences a "constant" pain on her right side, that performing household chores can often worsen the symptoms, and that this pain has slowly increased in severity over time.  Id. 69-70.

The ALJ concluded that Caron's testimony regarding the severity of her symptoms was "not entirely credible."  R. at 24.  First, the ALJ considered plaintiff's "daily activities" in light of her alleged mental limitations and noted that she was able to pay bills, run errands, drive, and manage her financial affairs despite her allegations of forgetfulness and serious anxiety problems.  Id.  The ALJ also considered the "type, dosage, effectiveness, and side effects" of her medication, noting that treatment records from 2007 indicated plaintiff was responding favorably to her current medication regimen and that her anxiety "actually has stabilized."  Id. 1327.  The ALJ also noted that plaintiff had been employed for over three years in a job that required her to perform various mental tasks, such as bookkeeping, pulling reports in the morning, taking deposits to the bank, and acting as a cashier.  Id. 24, 65-67.

Notably, the ALJ considered Caron's testimony that her anxiety and depression had recently worsened and found that post-hearing treatment notes from Daniel Knef, her primary care provider, indicated that she had recently denied any anxiety, difficulty concentrating, or other mental problems.  R. at 1387.  These post-hearing notes also indicated plaintiff had "normal attention span and concentration" and that she should continue her current treatment regimen of Lexapro, her prescribed psychiatric medication.  Id.  Finally, the ALJ noted that plaintiff testified she had never been hospitalized for psychiatric issues and that she experiences no side effects from the Lexapro.  Id. 78.

The ALJ also considered Caron's testimony in light of her alleged physical limitations.

First, the ALJ acknowledged that plaintiff "has been treated for pain, which is obviously present to some degree." R. at 24. However, the ALJ identified record evidence, including medical reports and plaintiff's testimony regarding her daily activities, to conclude that plaintiff's back pain was of milder severity than reported. Id. Plaintiff suggests that the ALJ's consideration of her daily activities was improper because her decision to endure her pain should not be weighed against her. See Pl.'s Mem. 20-21 (citing, e.g., Genier v. Astrue, 606 F.3d 46, 50 (2d Cir. 2010)); see also Williams v. Bowen, 859 F.2d 255, 260 (2d Cir. 1988) (noting that "a [plaintiff] need not be an invalid to be found disabled"). However, the Commissioner's regulations explicitly identify "daily activities" as among the testimony an ALJ should consider. In any event, the ALJ's written decision in this case reveals that he considered a great deal of record evidence beyond this testimony in making his credibility determination regarding plaintiff's physical limitations.

For example, the ALJ noted that the most recent examination by Robert Monsey, M.D., a back specialist from the Spine Institute of New England, indicated a few "positive" findings to support Caron's allegations of chronic, disabling pain. R. at 1418-19. Specifically, Dr. Monsey found that plaintiff walks with a "mildly antalgic gait" on her right side and that she suffers from a limited range of motion. Id. However, Dr. Monsey also indicated that plaintiff has no difficulty with heel and toe walking, has "5/5" strength in her lower extremities, and does not experience any radiating pain into her legs. Id. 1419. The ALJ also noted that Daniel Knef, a physicians' assistant at Champlain Valley Physicians' Hospital Center and plaintiff's primary care provider, described several MRI reports of the lower back as "normal" and noted that these reports do not "show any obvious pathology" to explain her back pain. Id. 21.

These conservative findings were corroborated by other spine specialists, including Warren Reinhart, M.D., who examined Caron on a number of occasions. R. at 1335-39. Dr. Reinhart's examinations found only "mild" degeneration in MRI imaging from 2007 and 2009, and a December 2010 MRI showed only a "small" disc herniation at her L5-S1 as well as "mild" degeneration similar to a 2008 MRI imaging report. R. at 1338.

Caron also contends that the ALJ's reliance on Dr. Monsey's findings of two Waddell's signs to discredit her testimony was error.[4] Pl.'s Mem. 23. Plaintiff argues that the ALJ's mention of this fact, without an accompanying explanation, was insufficient "to attach any significance to them." Pl.'s Mem. 26 (emphasis in original).

"[A]t best, Waddell signs may be used as one minor factor in a credibility determination," Huertas v. Astrue, 844 F. Supp. 2d 197, 206 (D. Mass. 2012), and a review of the ALJ's written decision reveals that these signs were mentioned as one factor in a larger discussion of why Caron's testimony was not entirely credible. To ignore the ALJ's thorough discussion of plaintiff's testimony in comparison to the medical record and to focus on a single remark—that plaintiff's Waddell signs were "important[ ]"—is to elevate form over substance. R. at 25.

"[ALJs] (who usually have the only opportunity to observe witnesses' demeanor, candor, fairness, intelligence[,] and manner of testifying) obviously are best-positioned to make accurate credibility determinations . . . . [and] reviewing courts are loathe to second-

---

[4] "Waddell's signs are indications that a patient's response to certain movements is inappropriate or unexpected, such as yelling out in pain in response to a very light touch." Germain v. Astrue, 1:11-CV-0879 (RFT), 2013 WL 587369, at *5 n. 6 (N.D.N.Y. Feb. 12, 2013) (Treece, M.J.) (citation omitted). These signs are a group of eight physical findings divided into five categories, the presence of which are considered indicative only of symptom magnification or pain behavior. See Waddell, Gordon, et al., "Nonorganic Physical Signs in Low-Back Pain," Spine 5(2): 117-125 (March/April 1980).

guess and overturn [such] credibility choices." Whiting v. Astrue, No. 1:12-274, 2013 WL 427171, at *6 (N.D.N.Y. Jan. 15, 2013) (Report & Recommendation) (Hines, M.J.), adopted by 2013 WL 427166 (N.D.N.Y. Feb. 4, 2013) (Mordue, J.) (citations omitted); cf. Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'").  After reviewing the record evidence in light of the various factors relevant to a proper credibility determination, the ALJ concluded that Caron's limitations were inconsistent with her acknowledged daily activities, the limited medical findings on several examinations and imaging reports of her lumbar spine, and the opinion of her primary care provider.  Because the ALJ applied the correct legal standards and his credibility determination is supported by substantial evidence, it will not be disturbed.

## 2.  Treating Physician Rule

Caron next contends that the ALJ erred by giving too much weight to Mr. Knef's opinion because he is not an "acceptable medical source."  Pl.'s Mem. 28.

The Commissioner's regulations categorize medical evidence from various sources into three categories:  "treating," "acceptable," and "other."  Griffin v. Colvin, No. 7:12-cv-976 (GLS/ESH), 2014 WL 296854, at *6 (N.D.N.Y. Jan. 27, 2014) (Sharpe, C.J.) (adopting Report & Recommendation of Hines, M.J.).  A "treating" source includes "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."  See 20 C.F.R. §§ 404.1502, 416.902.  An "acceptable" source includes "licensed physicians (medical or osteopathic doctors), psychologists, optometrists, podiatrists, and speech-language pathologists."  Griffin, 2014 WL 296854 at *6; see 20

C.F.R. §§ 404.1513(a), 416.913(a).  An "other" source refers to "ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists." Griffin, 2014 WL 296854 at *6; see 20 C.F.R. §§ 404.1513(d), 316.913(d).

"It is well-settled that 'the medical opinion of a [plaintiff's] treating [source] is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence.'"  Hatcher v. Astrue, 802 F. Supp. 2d 472, 476 (W.D.N.Y. 2011) (quoting Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)) (alteration added).  However, only "acceptable" treating sources are entitled to this presumption of controlling weight.  See SSR 96-2p.  Although an opinion from an "other" source may be considered "with respect to [a plaintiff's] impairment and ability to work," the Commissioner's regulations do not require an ALJ to assign the same presumption of controlling weight to these ancillary treatment providers.  See Genier, 298 Fed. Appx. at 108.

Nevertheless, an ALJ may consider evidence from all three sources when "determining severity of impairments and how they affect [a plaintiff's] ability to function." Griffin, 2014 WL 296854, at *7.  Regardless of the source, the appropriate amount of weight to be afforded such evidence is determined by applying the same general criteria:  (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) evidence supporting the opinion; (4) consistency with the record as a whole; (5) the source's specialization in the area of treatment; and (6) other significant factors.  20 C.F.R. §§ 404.1527(c), 416.927(c); see also SSR 06-03p ("Although the[se] factors [ ] explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'").

Importantly, these same regulations acknowledge that, in some instances, opinions

from "other" medical sources may outweigh the opinions of "acceptable" medical sources:

> [D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

See SSR 06-03p.

Here, the ALJ gave Mr. Knef's opinion regarding Caron's physical limitations "controlling" weight. R. at 25. Plaintiff admits that Mr. Knef is her "longtime primary care provider," but argues that he "is not a specialist in either orthopedic medicine or psychiatry" and that the "medical signs and laboratory findings contradict his opinion." Pl.'s Mem. 28. The Commissioner concedes that the ALJ's characterization of Mr. Knef's opinion as "controlling" is an arguable technical error, but argues that the ALJ's ultimate reliance on this opinion was proper given the nature and length of the treatment relationship at issue. Def.'s Mem. 11-12.

A review of the ALJ's written decision reveals no basis for remand or reversal based on this contested issue. As the Commissioner correctly notes, Caron's argument in support of this point merely details an extensive list of objective findings from various "acceptable" medical sources without articulating how Mr. Knef's assessment is inconsistent with substantial opinion evidence in the record. See Pl.'s Mem. 28-30. The ALJ's written decision reflects appropriate use of the weighing criteria in his discussion of the opinion evidence. For instance, the ALJ notes that Mr. Knef's January 5, 2011 assessment is entitled to less weight because of its "lack of specificity," but finds Mr. Knef's later assessment of April 11, 2011

valuable because it was conducted after he had the opportunity to evaluate plaintiff's most recent MRI imaging report.  R. at 25.  Further, although the ALJ afforded "little weight" to the opinion of consultative examiner Nader Wassef, M.D., he noted that Dr. Wassef's medical source statement concluded that there was no evidence of musculoskeletal limitations.  R. at 758; <u>Griffin</u>, 2014 WL 296854, at *6 (noting that an "other" source may not be relied upon to establish the existence of a medically determinable impairment) (citing SSR 06-03p).

This is not a case where the ALJ discounted the opinion of an "acceptable" medical source indicating a plaintiff was severely disabled in favor of a more conservative opinion given by an "other" source.[5]  Rather, the ALJ's consideration of the length, nature, and extent of the treatment relationship between Caron and Mr. Knef, and the consistency of Mr. Knef's opinions with the record as a whole, support the ALJ's decision to afford the most weight to Mr. Knef's opinion.  See <u>Diaz v. Shalala</u>, 59 F.3d 307, 314 (2d Cir. 1995) ("[T]he ALJ has the discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him.").

Caron also argues that Mr. Knef's detailed functional capacity assessment, completed on April 11, 2011, is "undermined" by later treatment notes acknowledging her back pain and L5-S1 central disc herniation as well as his apparent determination that her back had "deteriorated" subsequent to this April assessment.  Pl.'s Mem. 28.  However, the record

---

[5]  While the ALJ's decision to label Mr. Knef's opinion as "controlling" requires careful scrutiny given the term's artful meaning in the Social Security context, there is no indication in the record that the ALJ mistakenly understood Mr. Knef to be anything but what he was:  an "other" source with the most extensive treatment relationship with plaintiff.  But see <u>Griffin</u>, at *8 n. 21 (noting the ALJ's mistaken reference to a physicians' assistant as a treating physician was an "egregious" mistake).  Rather, the ALJ consistently referred to Mr. Knef as an RPA-C (a physicians' assistant may use the post-nominal initials "PA," "PA-C," "APA-C," "RPA," or "RPA-C," where the "-C" indicates "certified" and the "R" indicates "registered").  The record demonstrates the ALJ's awareness of Mr. Knef's status as a physicians' assistant and not that of a treating source entitled to the generous presumption of controlling weight.

reveals that Mr. Knef was aware of plaintiff's L5-S1 disc herniation prior to rendering his April 11, 2011 assessment. Indeed, Mr. Knef had received the December 2010 MRI report as well as treatment notes from Dr. Reinhart detailing this herniation prior to rendering his later assessment. R. at 1393-95. Accordingly, the ALJ's decision to afford Mr. Knef the greatest weight does not necessitate remand.

### 3. **RFC Determination**

Caron next contends that the ALJ committed numerous errors in determining that she retained the RFC to perform sedentary work despite her combination of impairments. Pl.'s Mem. 31.

A plaintiff's RFC is defined as "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id. When making this determination, the ALJ must consider a plaintiff's "physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." Judge v. Comm'r of Soc. Sec., No. 12-CV-482 (GLS/VEB), 2013 WL 785522, at *3 (N.D.N.Y. Feb. 1, 2013) (Bianchini, M.J.) ((citing 20 C.F.R. § 404.1545(a)) (Report & Recommendation), adopted by 2013 WL 785641 (N.D.N.Y. Mar. 1, 2013) (Sharpe, C.J.).

First, Caron contends that she did not retain the RFC to work because of her constant pain. Pl.'s Mem. 34. In what appears to be a renewal of her argument regarding the ALJ's

adverse credibility determination, she argues that the ALJ "erred by failing to credit [her] subjective evidence of pain, even though it <u>was</u> supported by clinical and laboratory medical evidence."  Pl.'s Mem. 35 (emphasis in original).

This argument is without merit.  The ALJ's written decision confirms an awareness of Caron's allegations of constant, disabling pain.  <u>See</u> R. at 24 (noting that plaintiff "had reported constant pain, and has been treated for pain, which is obviously present to some degree").  However, the ALJ determined that the record evidence failed to establish the degree of disabling pain alleged by plaintiff.  As previously discussed, the ALJ properly evaluated plaintiff's credibility and concluded that the medical record did not fully support her allegations.

Second, Caron contends that she did not retain the RFC to work because of her mental illness and borderline intelligence.  Pl.'s Mem. 35.  Plaintiff argues that her full-scale IQ of 81, history of special education, and testimony that she cannot read "big words" and has a hard time with math support this argument.  Pl.'s Mem. 36.  Plaintiff further argues that the ALJ improperly "seized" on the fact that she testified to doing "the books" during her previous work at Kinney's drug store.  <u>Id</u>.

This argument also fails.  The ALJ addressed Caron's reported mental limitations and ultimately gave "[g]reat weight" to the opinions of state agency psychological consultants T. Harding and H. Ferrin.  R. at 639-41, 786-88.  After reviewing the medical record, both consultants found that plaintiff could satisfy the basic mental demands for unskilled work, such as understanding simple directions and instructions, using appropriate judgment to make simple, work-related decisions, and responding appropriately to supervision and co-workers in a work setting.  <u>Id</u>. 641, 788.  Dr. Ferrin also noted that plaintiff has a fair ability to

make appropriate decisions and may benefit from a low-contact environment.  Id. 788.

These findings are reflected in the ALJ's written decision.  Notably, the ALJ also properly

applied the requisite "special technique" used to evaluate mental impairments and included a

specific finding of the degree of limitation suffered by plaintiff in each of the required

functional areas.[6]

Third, Caron contends that the ALJ failed to consider her obesity.  Pl.'s Mem. 37.

"Where the record contains evidence of limiting effects from a [plaintiff's] obesity, the ALJ

must consider the impact of [p]laintiff's obesity together with the [p]laintiff's related

impairments."  Farnham v. Astrue, 832 F. Supp. 2d 243, 261 (W.D.N.Y. 2011) (citation

omitted).  However, the ALJ's duty to discuss a plaintiff's obesity diminishes "where evidence

in the record indicates the [plaintiff's] treating or examining sources did not consider obesity

as a significant factor in relation to the [plaintiff's] ability to perform work related activities."  Id

(citations omitted).

Here, the ALJ's written decision reveals an awareness of Caron's obesity and a

consideration of what effect, if any, it had in combination with her severe impairments.  For

instance, the ALJ noted that although she is obese, plaintiff "has no significant difficulty in

---

[6]  Where the alleged disability involves a mental impairment, there is a "special technique" that must be applied at steps two and three and at each level of the administrative review process.  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008); 20 C.F.R. § 404.1520a.  This technique requires consideration of "four broad functional areas," including:  "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  § 404.1520a(c)(3).  The first three areas are rated on a five-point scale:  "[n]one, mild, moderate, marked, and extreme."  § 404.1520a(c)(4).  "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits."  Kohler, 546 F.3d at 266 (quoting 20 C.F.R. § 404.1520a(d)(1)).
        However, where the claimant's mental impairment is deemed severe, "the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder."  Id. (citing 20 C.F.R. § 404.1520a(d)(2)).  If so, the claimant is disabled.  Id.  If not, the reviewing authority then assesses the claimant's RFC at step four.  Id. (citing 20 C.F.R. § 404.1520a(d)(3)).

ambulating" and that "she uses no assistive device."  R. at 19.  He further found that plaintiff "is able to engage in a wide array of daily activities" and "several examinations" have shown that she has a normal gait.  Id.  Although plaintiff correctly notes that her Body Mass Index ("BMI") readings of 39.97 in February 2011 and 40.83 in July 2011 result in a categorization of "extreme" obesity under the Commissioner's regulations, this fact alone does not merit a finding of error.  See Macaulay v. Astrue, 262 F.R.D. 381, 388 n. 8 (D. Vt. 2009) (citing SSR 02-1p) (noting that a BMI of 40 or greater "carries the greatest risk for developing obesity related impairments, but does not necessarily correlate with any specific degree of functional loss").

Caron further suggests that "medical reports noted that her obesity was exacerbating her spinal disorder," but does not identify the medical records that would directly confirm this assertion.  See Pl.'s Mem. 38.  For instance, although various doctors noted that plaintiff's obesity makes her a poor candidate for surgery, these evaluations do not note specific limitations arising from the obesity itself.  See R. at 938 (Daniel Bullock, M.D.); R. at 1313 (Daniel Knef, RPA-C); R. at 1388 (same).  "[A]n ALJ is not obligated to single out a [plaintiff's] obesity for discussion in all cases."  Yablonski v. Comm'r of Soc. Sec., 03-CV-414, 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31, 2008) (Treece, M.J.) (citation omitted).  Accordingly, the ALJ's method of considering plaintiff's obesity in his written decision was not error.

Finally, Caron contends she was disabled by her "Endomitriosis [sic] in combination with her other severe impairments" and "was impaired by her Epidermolysis Bullosa Simplex ["EBS"] in combination with her other severe impairments."  Pl.'s Mem. 38-39.  Plaintiff argues that the ALJ erred in not considering the limitations caused by these conditions in

making his RFC determination.  However, plaintiff's arguments are belied by a review of the ALJ's written decision.  The ALJ found plaintiff's endometriosis "severe" at step two and noted that she had "chronic pelvic pain and [a] history of pelvic endometriosis and pelvic adhesions."  R. at 18.  The ALJ further noted that plaintiff underwent two separate surgeries as a result of her endometriosis.  Id.

Likewise, the ALJ noted that a skin biopsy performed by Julie Lin, a dermatologist, indicated that plaintiff "most likely" suffered from EBS.  R. at 19.  However, plaintiff has not identified any evidence in the medical record attaching any specific functional limitations to this "likely" diagnosis.  After all, the "mere presence of a disease or impairment alone . . . is insufficient to establish disability; instead, it is the impact of the disease, and in particular any limitations which it may impose upon the ability to perform basic work functions, that is pivotal to the disability inquiry."  Martin v. Comm'r of Soc. Sec., No. 5:06-CV-720 (GLS/DEP), 2008 WL 4793717, at *13 (N.D.N.Y. Oct. 30, 2008) (Sharpe, C.J.) (citations omitted).  Plaintiff cites to her own hearing testimony to argue that she suffers from various limitations as a result of this EBS, including "blisters and scarring on her hands and feet" that make it "hard for her to write, open containers, or [use a] keyboard."  Pl.'s Mem. 40.  However, plaintiff also testified that this condition has remained constant throughout her life, and that she was able to work for several years despite her EBS.  R. at 67-69.  The voluminous medical record before the ALJ included various references to these ongoing problems and the ALJ discussed the existence of these impairments.  There is every indication that he considered the effects of her various maladies in combination before arriving at his detailed RFC assessment.  Accordingly, plaintiff's various arguments regarding the ALJ's RFC determination do not necessitate remand.

**4. Appeals Council**

Caron finally contends that the Appeals Council erred in failing to consider a September 18, 2012 MRI report submitted as part of plaintiff's request for review. Pl.'s Mem. 40.

The Commissioner's decision does not become final until the Appeals Council either renders its decision or denies review. Jones v. Colvin, No. 13-CV-06443(MAT), 2014 WL 2560593, at *6 (W.D.N.Y. June 6, 2014) (citations omitted). The Appeals Council "must review all the evidence in the administrative record and any additional evidence received." Id. (citing 20 C.F.R. § 416.1479). The Commissioner's regulations explicitly permit a plaintiff to submit additional evidence in support of a request for Appeals Council review. Id. (citing 20 C.F.R. §§ 416.1470(b), 416.1476(b)(1)). The Appeals Council must accept this evidence provided it is "new, material, and relates to the period on or before the date of the ALJ's decision." Id. (citation omitted). If this evidence does not relate to the relevant time period, the Appeals Council "must return the evidence to the [plaintiff], issue an explanation why it was not accepted, and advise the [plaintiff] of the right to file a new application." Id. (citing 20 C.F.R. § 416.1476(b)(1)).

Here, Caron submitted a report from Valcour Imaging, LLC detailing the results of an MRI conducted on September 18, 2012. R. at 9. The Appeals Council, in compliance with the relevant regulations, rejected this evidence, explaining that "[t]he [ALJ] decided your case through August 26, 2011. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 26, 2011." R. at 2. Plaintiff contends that this MRI report is both new and relevant because it "shows the radiological progression of her spinal disorder," confirms previous reports and

clinical evaluations, and supports her credibility.  Pl.'s Mem. 43.

Caron correctly argues that the Second Circuit has held that "post-decision medical documents are not automatically irrelevant to the pre-decision period."  Pl.'s Mem. 41. However, there is no reasonable probability that the Appeals Council, or the ALJ for that matter, would have reached a different result based on this additional evidence.  It consists of the results of a single imaging study completed nearly a year after the period for which plaintiff's benefits claims were denied.  There was ample evidence in the existing medical record regarding plaintiff's reports of low back pain, a history of its diagnostic study and conservative treatment, and ongoing problems with her spine at the L5-S1 level.  See, e.g., R. at 1338.

This new MRI imaging study indicates that the only clinically significant finding was an "annular tear" at the L5-S1 level.  R. at 10.  This single study does not suggest Caron was experiencing additional symptoms or increased impairments that were not already described in the record for the disability period at issue here.  See Pearson v. Astrue, 1:10-CV-521(MAD), 2012 WL 527675, at *11 (N.D.N.Y. Feb. 17, 2012) (D'Agostino, J.) ("Materiality requires that the new evidence not concern a later-acquired disability or the subsequent deterioration of the previous non-disabling condition." (citation and internal quotation marks omitted)).  Accordingly, the Appeals Council did not err by concluding this new MRI report did not warrant review of the ALJ's decision.

## IV.  CONCLUSION

After reviewing the entire record, including the briefs, ALJ's decision, transcript of the hearing, medical and other evidence, the Commissioner's decision is not based on legal error and ample evidence exists in the record as a whole that "a reasonable mind might accept as

adequate to support [the] conclusion." <u>Richardson</u>, 402 U.S. at 401.

Therefore, it is

ORDERED that

1.  Caron's motion for judgment on the pleadings is DENIED;

2.  The Commissioner's motion for judgment on the pleadings is GRANTED;

3.  The Commissioner's decision is AFFIRMED; and

4.  Caron's complaint is DISMISSED.

The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  July 8, 2014
        Utica, New York.